## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS S. TROUP, on behalf of himself and all others similarly situated, ) ) | **CIVIL ACTION NO.** |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **CLASS ACTION** |
| PEPCO HOLDINGS, INC; CONECTIV, and ) PEPCO HOLDINGS RETIREMENT PLAN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

Plaintiff, Thomas S. Troup, on behalf of himself and all others similarly situated, alleges for his complaint as follows:

### INTRODUCTION

1.     This is a class action brought on behalf of persons who were participants in the Conectiv Retirement Plan, as amended and restated effective January 1, 1999, and who had their accrued benefit determined under the Conectiv Cash Balance Sub-Plan effective as of January 1, 1999 instead of a predecessor plan. Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended; as Plaintiff demonstrates below, the Conectiv Cash Balance Sub-Plan violates ERISA as it fails to comply with ERISA's accrual requirements. Further, Plaintiff and the class were not given the requisite notice that the rate at which they earned benefits would decrease under the amended plan. Accordingly, Plaintiff brings this action seeking appropriate declaratory, injunctive and other relief, including a declaration that the Conectiv Cash Balance Sub-Plan, which went into place through amendment of defined benefit plans maintained by Atlantic City Electric Company and

Delmarva Power & Light Company, is invalid and that the accrued benefits of Plaintiff and each member of the class should therefore be calculated under and pursuant to the terms of the predecessor plans sponsored by Atlantic City Electric Company and Delmarva Power & Light Company.

## JURISDICTION AND VENUE

2.      This Complaint arises under Section 502(a) of ERISA, 29 U.S.C. § 1132(a). This Court has subject matter jurisdiction over this matter under Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and under 28 U.S.C. § 1331.

3.      Venue is proper in this district under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the relevant pension plan is administered, in whole or in part, in this district, the violations of law alleged in this action occurred (in whole or in part) in this district, and defendants do business and are found in this district.

## PARTIES

4.      Plaintiff Thomas S. Troup ("Plaintiff" or "Troup") is an individual who resides in the State of Delaware and a long-term employee of Delmarva Power & Light Company. Plaintiff Troup is fifty-six years old and commenced his covered employment on October 15, 1979. Plaintiff Troup was a participant in the Delmarva Power & Light Company Retirement Plan. Effective as of January 1, 1999, Plaintiff Troup became a participant in the Conectiv Retirement Plan and, more particularly, the Conectiv Cash Balance Sub-Plan which formed a part thereof.

5.      Defendant Pepco Holdings, Inc. ("Pepco Holdings") is a Delaware corporation with its principal place of business in Washington, DC. Pepco Holdings is a public utility holding company registered under the Public Utility Holding Company Act of 1935. Pepco

2

Holdings was incorporated on February 9, 2001 for the purposes of an acquisition of defendant
Conectiv.

6.    Defendant Conectiv is a corporation organized under the laws of the State of
Delaware with its principal place of business in Wilmington, Delaware. Conectiv was formed in
1998 to be a holding company for Delmarva Power & Light Company ("Delmarva") and
Atlantic City Electric Company ("Atlantic City Electric") in connection with the combination of
these two entities. Conectiv is a registered public utility holding company under the Public
Utility Holding Company Act of 1935, and Delmarva and Atlantic City Electric are wholly
owned subsidiaries of Conectiv; Delmarva and Atlantic City Electric became subsidiaries of
Conectiv on March 1, 1998. On August 1, 2002, Conectiv, in turn, became a wholly owned
subsidiary of Pepco Holdings.

7.    Defendant Pepco Holdings Retirement Plan (the "Pepco Holdings Plan") is an
employee benefit plan maintained pursuant to ERISA. More specifically, the Pepco Holdings
Plan is a pension plan, within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2) and a
defined benefit plan within the meaning of Section 3(35) of ERISA, 29 U.S.C. § 1002(35). The
Pepco Holdings Retirement Plan is the successor by merger to the Conectiv Retirement Plan,
which was merged with another defined benefit pension plan maintained by an affiliate of Pepco
Holdings on December 31, 2002.

## CLASS ACTION ALLEGATIONS

8.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal
Rules of Civil Procedures on behalf of the following class ("the Class"):

> All persons who have had their accrued benefit determined pursuant to the terms
> of the Cash Balance Sub-Plan of the Conectiv Retirement Plan and their
> beneficiaries. Excluded from the Class are those persons who qualified for the

grandfathered benefit and who will reach Normal Retirement Age on or before
December 31, 2008, along with their beneficiaries.

9.    The Class is so numerous that joinder of all members is impractical. While the
exact number of Class members is currently not known to Plaintiff, according to the Internal
Revenue Service Form 5500 Annual Report for the Conectiv Retirement Plan for calendar year
2002, there were over 3,399 active participants in the Conectiv Retirement Plan.

10.    Common questions of law and fact exist as to all members of the class, including
the following:

    a.    whether the Class Balance Sub-Part of the Conectiv Retirement Plan
violates the accrual requirement of Section 204 of ERISA, specifically Sections
204(b)(1)(A), (B), (C), 29 U.S.C. § 1054(b)(1)(A), (B), (C).

    b.    whether the Cash Balance Sub-Plan of the Conectiv Retirement Plan
violates Section 204(b)(1)(G) of ERISA, 29 U.S.C. § 1054(b)(1)(G).

    c.    whether the Cash Balance Sub-Plan of the Conectiv Retirement Plan
violates Section 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i).

    d.    whether defendant Conectiv violated the provisions of Section 204(h) of
ERISA, 29 U.S.C. § 1054(h) by failing to provide participants with sufficient notice of an
amendment to a plan that would result in a significant decrease in the rate of future
benefit accrual.

    e.    whether Plaintiff Troup and each Class member is entitled to the relief
sought in this complaint.

11.    Plaintiff Troup is a member of the Class, and his claims are typical of the claims
of the members of the Class.

12.     Plaintiff will fairly and adequately protect the interests of the members of the

Class and has retained counsel who are competent and experienced in ERISA and class action

litigation. Plaintiff does not have interests that are antagonistic to or in conflict with the interests

of the members of the Class whom he seeks to represent.

13.     Class certification is appropriate under Rules 23(b)(1)(B) and (b)(2) of the

Federal Rules of Civil Procedure because adjudications with respect to individual members of

the Class would, as a practical matter, be dispositive of the interests of other non-party members

and defendants have acted on grounds generally applicable to the Class, making declaratory,

injunctive and other equitable relief on a class-wide basis appropriate.

14.     In the alternative, class certification would also be appropriate under Rule

23(b)(3) of the Federal Rules of Civil Procedure because the common questions of law and fact

presented in this action predominate over any individual issues. A class action is superior to

other available methods for the fair and efficient adjudication of this controversy, since joinder

of all members is impractical. Furthermore, the expense and litigation makes it impractical for

the members of the Class to pursue individual litigation in order to vindicate their rights.

Plaintiff is not aware of any management problems that would militate against the maintenance

of this action as a class action.

## FACTUAL BACKGROUND

### Formation of the Conectiv Plan

15.     Prior to 1998, Atlantic City Electric and Delmarva were independent companies

that were regulated utilities. On March 1, 1998, they became wholly owned subsidiaries of

Conectiv. At the time that they were acquired by Conectiv, Atlantic City Electric and Delmarva

each was the sponsor of its own defined benefit pension plan pursuant to ERISA, the Atlantic

5

City Electric Company Retirement Plan ("Atlantic City Plan") and the Delmarva Power & Light

Company Retirement Plan ("the Delmarva Plan"). Both plans were "final pay" plans, in which

the annuity provided as a retirement benefit was determined by multiplying the average pay

earned by a participant over a period of time by their years of service, and multiplying the

product of that by a percentage factor to determine the amount of the annual benefit payable at

normal retirement age. Conectiv would later characterize the difference between the two plans

as follows:

> The main difference is that Atlantic Energy employees could retire at 55 with no
> reduction in benefit, while Delmarva Power employees could retire at 60 with no
> reduction in benefit, or at 55 with a 24% reduction in benefit. The Atlantic
> Energy percentage multiplier is 1.6%, compared to the Delmarva Power 1.5%.
> On the other hand, Delmarva Power employees have an enhanced survivor benefit
> that Atlantic Energy employees do not have. . . .

16.    Following its acquisition of Atlantic City Electric and Delmarva, Conectiv

determined that it wished to create a single defined benefit pension plan out of the two

predecessor plans. This was done by merging the Delmarva Plan into the Atlantic City Plan and

renaming the Atlantic City Plan the Conectiv Retirement Plan. This merger of the Delmarva

Plan and the Atlantic City Plan to form the Conectiv Retirement Plan took effect on December

30, 1998. Defendant Conectiv became the plan sponsor of the Conectiv Retirement Plan within

the meaning of Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(3)(16)(B), and the named

fiduciary within the meaning of Section 402(a) of ERISA, 29 U.S.C. § 1102(a).

17.    At the same time that it merged the Atlantic City Plan and the Delmarva Plan,

Conectiv elected to switch the basic form of the plan from a final pay plan to a cash balance plan.

While benefit consultants frequently characterizes a cash balance plan as a hybrid, having

characteristics of both a defined benefit plan and a defined contribution plan, in fact it is simply a

6

different form of defined benefit plan subject to all of the requirements of ERISA governing defined benefit plans.

18.     In a cash balance plan, each participant has a hypothetical account which is purely for bookkeeping purposes. No specific assets are allocated to any particular participant's "account," and the value of the "account" does not fluctuate in response to gains and losses recognized on plan assets. Each year, the plan's sponsor in a cash balance plan adjusts the participant's account with various credits based upon the formula set forth in the plan document. Typically, these credits reflect some factor based on earnings, along with an interest credit, which is usually derived from the thirty year treasury rate.

### Overview of Conectiv's Cash Balance Plan

19.     Certain unionized employees were not converted to the cash balance plan formula. Thus, when the Conectiv Retirement Plan was formed, it included three component sub-plans: the ACE Sub-Plan, which covered employees who were represented by IBEW Local 210 or Local 210A; the Delmarva Sub-Plan, which covered employees represented by IBEW Local 1238, 1238A, Local 1307 or Local 1307A; and the Cash Balance Sub-Plan, which covered certain management and unionized employees of the various participating affiliated companies. Unless they qualified for the ACE Sub-Plan or the Delmarva Sub-Plan, participants who were covered by the Atlantic City Plan or the Delmarva Plan were placed in the Cash-Balance Sub-Plan as of January 1, 1999.

20.     In dealing with participants who were placed in the Cash Balance Sub-Plan, Conectiv determined that it would grandfather certain employees who were participants in the Atlantic City Plan and the Delmarva Plan. Participants in these plans were grandfathered if, as of December 31, 1998, they had attained age fifty or completed at least twenty years of service

7

calculated under the terms of the predecessor plan. Employees qualifying for a grandfathered benefit would then have their retirement benefits calculated under the terms of the predecessor plan provided that they terminated employment on or before December 31, 2008. In effect, these participants were granted grandfathered status for a period of ten years.

21.     As of December 31, 1998, Plaintiff did not qualify for grandfathered benefits as he did not meet the requisite age and service requirements. Accordingly, pursuant to the terms of the Conectiv Retirement Plan, the plan's actuary calculated an Initial Cash Balance under the plan by converting the benefits that he earned under the prior plan to an equivalent lump-sum opening balance. The same process was applied to each participant in the Atlantic City Plan and the Delmarva Plan.

22.     From January 1, 1999 through the present, Plaintiff has been a participant in the Cash Balance Sub-Plan of the Conectiv Retirement Plan. Accordingly, the pension benefits that he has accrued since that date have been governed by the formula under that plan, which has three different components: Pay Credits; Interest Credits; and Transition Credits.

23.     Under the terms of the Cash Balance Sub-Plan, Pay Credits are expressed as a percentage of compensation that is determined on the basis of the employee's age in a particular year, according to the following formula:

| Participant's Age | Pay Credit Rate |
| --- | --- |
| Under 30 | 5% |
| 30-34 | 6% |
| 35-39 | 7% |
| 40-44 | 8% |
| 45-49 | 9% |

| 50 and over | 10% |
|---|---|

Under this formula, an employee who reached age forty in 1999 with an annual salary of $55,000 would receive a Pay Credit of $4,400, which equals her salary of $55,000 multiplied by the 8% rate applicable for participants age forty to forty-four.

24.     Interest Credits under the Cash Balance Sub-Plan are calculated based upon the thirty year Treasury Bond rate as of October 31 of the prior year. At the end of each calendar year, an Interest Credit is made to the account by multiplying the opening account balance as of the beginning of the year by the applicable thirty year treasury rate. Under this formula, an employee who had a plan account balance of $5,000 as of January 1, 2000 would receive an interest credit to their account as of December 31, 2000 in the amount of $300, which represents the $5,000 account balance as of the commencement of the year multiplied by the thirty year treasury rate as of October 31, 1999, which was 6%.

25.     Transition Credits are available to those who were management employees as of January 1, 1999 who had at least ten years of service under a predecessor plan as of that date. Transition Credits were applied to each eligible participant's account balance at the end of each calendar year. Transition Credits were available commencing as of December 31, 1999 and would be continually applied to the account balance until the participant had more than thirty-five years of service.

26.     Transition Credits are expressed as a percentage of compensation; the percentage varied based upon the number of years of service the employee had as of January 1, 1999, according to the following formula:

9

| Participant's Years of Service as of Effective Date | Transition Crediting Rate |
|---|---|
| Less than 10 years | 0.0% |
| 10 – 11 years | 1.0% |
| 12 – 15 years | 2.0% |
| 16 – 19 years | 3.0% |
| 20 or more years | 4.0% |

Under this formula, an employee with twelve years of service under a predecessor plan who earned $55,000 during 1999 would receive a Transition Credit of $1,100, determined by multiplying their salary of $55,000 by the 2% Transition Credit rate applicable to employees who had twelve to fifteen years of service as of January 1, 1999.

27.     On August 1, 2002, Conectiv became a wholly owned subsidiary of Pepco Holdings. Thereafter, Pepco Holdings merged the Pepco General Retirement Plan (a defined benefit pension plan maintained by one of its subsidiaries) and the Conectiv Retirement Plan to create the Pepco Holdings Retirement Plan. This merger went into effect on December 31, 2002. The formation of the Pepco Holdings Retirement Plan did not alter the manner in which benefits were expressed for participants in the Conectiv Retirement Plan. Indeed, in its annual proxy statement dated as of March 31, 2005, Pepco Holdings stated that "the Pepco Holdings Retirement Plan consists of the Pepco General Retirement Plan and the Conectiv Retirement Plan." Pepco Holdings became the sponsor of the Pepco Holdings Retirement Plan within the meaning of Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B), and the named fiduciary under Section 402(a) of ERISA, 29 U.S.C. § 1102(a).

### Conectiv's Conversion Process

28.     Conectiv apparently began to give consideration to converting the Atlantic City

Plan and the Delmarva Plan to a cash balance formula even before its acquisition of the

companies had been finalized. Conectiv first announced its intention to do so to its workforce in

the Spring of 1998 (the exact date of which is not known to Plaintiff but is known to defendant

Conectiv). At that time, Conectiv issued disclosures which introduced the cash balance plan

concept as follows:

> Until now, employees of both DPL and AE have been covered by what are
> known as "final pay" pension plans. The "cash balance" pension plan is a new
> concept that has two important advantages: It's easier to *understand* than the
> former plans, and it's totally *"portable."* Both these features support our goal of
> designing a benefits package that meets the needs of today's more independent,
> more mobile workforce. The new cash balance pension plan will take effect
> January 1, 1999.

29.     In addition to touting the simplicity and portability of the new plan design, this

disclosure also emphasized the fact that the entire cash balance would pass to a beneficiary upon

the participant's death; this was contrasted with the existing joint and survivor annuity structure

under the predecessor plans, which provided for about half of the accrued benefit to be paid to a

surviving spouse.

30.     Conectiv's disclosures also revealed that certain employees with ten or more

years of service would be eligible for additional credits to their cash balance account. They also

explained that some employees would be grandfathered, as follows:

> Of course, many employees have already worked for most of their careers
> under the former "final pay" pension plans. For this reason, two groups of people
> will continue to be covered by their former plans for the next 10 years. They are
> employees who, as of January 1, 1999:
>
> - have completed 20 years of service, or
> - are age 50 or older

11

These "grandfathered" employees will have their pensions calculated
under both the former and new plans, and will receive whichever value is greater.
As an additional benefit, grandfathered employees have the option to elect a
lump-sum distribution under the former plan.

31.     The overall tenor of this Spring 1998 disclosure was that all employees would be

better off under the new cash balance design as it was easier to understand, more portable,

provided better survivor benefits, and incorporated features designed to protect the interests of

workers with long years of service.

32.     On or about December 21, 1998, Conectiv issued new disclosures in the form of a

letter with a question and answer format. The December 21st letter explained that the

grandfathering provision, along with the Transition Credits represented "extensive protections"

designed to provide "minimal impact on the existing workforce." The December 21st letter then

provided participants with tables that would allow them to generate a rough initial estimate of

what their opening balance would be, and provided them an updated version of the Spring 1998

disclosures.

33.     While the cash balance formula went into effect as of January 1, 1999, initial

account balance data was not available to affected employees until late June of that year. On or

about June 23, 1999, Conectiv issued a notification to managers indicating that opening

statements would be mailed the following week and that informational meetings were scheduled

from July 12 through July 29. This memorandum endeavored to distinguish the Conectiv cash

balance plan from other plans that had received adverse media scrutiny:

Recent stories in the national media have raised concerns about some cash-
balance plans that do not offer the same level of financial security or
grandfathering provisions as Conectiv's Class Balance Pension Plan. One part of
the presentation will address these concerns and demonstrate how Conectiv's plan
is different.

12

**How the Conversion Affected Plaintiff and the Class**

34.     Plaintiff Troup and each member of the Class had earned a right to annuity benefits under a predecessor plan.

35.     Plaintiff and each member of the Class had the annuity benefit earned under the old plan converted into a hypothetical opening account balance; this calculation was performed by Towers Perrin, the plan actuary, and brought the existing annuity benefit to present value as of December 31, 1998.

36.     Starting on January 1, 1999, Plaintiff and each Class member had their benefits under the Cash-Balance Sub-Plan of the Conectiv Retirement Plan expressed in the form of their account balance. The account balance consisted of their opening balance plus the Pay Credits, Interest Credits, and Transition Credits that they earned since January 1, 1999.

37.     While a cash balance plan expresses the employee's retirement benefits in the form of a lump-sum account balance, ERISA does not recognize this particular form of defined benefit. Instead, ERISA measures an employee's retirement benefits under a defined benefit plan by reference to their "accrued benefit," which is "an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A).

38.     For purposes of ERISA's substantive accrual rules governing defined benefit plans, the account balance of a participant has to be converted into an annuity commencing at age sixty-five to determine whether the Cash Balance Plan satisfies the minimum accrual requirements. This calculation is sensitive to fluctuations in the prescribed interest rate, which is the rate for the thirty year Treasury Bond.

39.     Because the conversion of the account balance to an annuity commencing at age sixty-five is sensitive to fluctuations in the thirty year treasury rate, participants can actually

13

suffer reductions in their accrued benefits under the Cash-Balance Sub-Plan of the Conectiv

Retirement Plan. For example, in 1999 and 2000 Plaintiff Troup's accrued benefit increased.

Thereafter, it subsequently decreased in three consecutive years: in 2001, his accrued benefit

decreased by 4.60%; in 2002, it decreased by 6.85%; and in 2003, it decreased by 3.29%. This

represented a total decrease in his annual annuity benefit of over $5000 between the close of

2000 and the close of 2003. In 2004, Plaintiff Troup's accrued benefit increased by 8.69%, but

was still significantly lower than the amount of his accrued benefit as of the end of calendar year

2000.

## COUNT I

40.    Plaintiff incorporates the allegations of paragraphs 1 through 39 herein by

reference as if fully set forth at length.

41.    As a defined benefit plan, the Cash Balance Sub-Plan of the Conectiv Retirement

Plan and the Pepco Holdings Plan is subject to the minimum accrual requirements of Section

204(b) of ERISA, 29 U.S.C. § 1054(b).

42.    Section 204(b)(1) of ERISA provides three alternative tests which a defined

benefit plan can meet to satisfy ERISA's accrual requirements, 3% rule, the $133^{1/3}$% rule and the

fractional rule. 29 U.S.C. § 1054(b)(1)(A), (B), (C).

43.    The Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco

Holdings Retirement Plan does not satisfy any of these tests. Accordingly, the Cash Balance

Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Retirement Plan fails to

satisfy ERISA's minimum accrual standards.

## COUNT II

44.    Plaintiff incorporates the allegations of paragraphs 1 through 39 herein by reference as if fully set forth at length.

45.    As a defined benefit plan, the Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan is subject to Section 204(b)(1)(G) of ERISA, 29 U.S.C. § 204(b)(1)(G).  Under Section 204(b)(1)(G) of ERISA, a defined benefit plan does not satisfy the accrual requirements of Section 204 "if the participant's accrued benefit is reduced on account of any increase in his age or service."  Because the Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan permits the accrued benefit of a participant to be reduced in subsequent years, it violates Section 204(b)(1)(G) of ERISA.

## COUNT III

46.    Plaintiff incorporates the allegations in paragraphs 1 through 39 herein by reference as if fully set forth at length.

47.    As a defined benefit plan, the Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan is subject to Section 204(b)(1)(H) of ERISA, 29 U.S.C. § 1054(b)(1)(H).

48.    Section 204(b)(1)(H) of ERISA provides that a defined benefit plan will not satisfy the minimum accrual requirements "if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age."  The Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan violates Section 204(b)(1)(H) of ERISA because the rate at which a participant accrues benefits under the plan is reduced as the participant's age increases.

15

## COUNT IV

49.     Plaintiff incorporates the allegations of paragraphs 1 through 39 herein by reference as if fully set forth at length.

50.     The Conectiv Retirement Plan, its predecessor and successors are all defined benefit pension plans subject to Section 204(h) of ERISA, 29 U.S.C. § 1054(h).  The Cash Balance Sub-Plan constituted an amendment providing for a significant reduction in the rate of future benefit accrual for participants in the Delmarva Plan and the Atlantic City Plan.

51.     Pursuant to Section 204(h) of ERISA, Conectiv could only amend the predecessor plans to implement the Cash Balance Sub-Plan if it provided each participant with a notice advising them that the amendment would provide for a significant reduction in the rate of future benefit accrual in a manner calculated to be understood by the average plan participant.  At the time that Conectiv issued its disclosures to participants concerning the new cash balance plan, it knew that the design of the plan would result in a significant reduction in future benefit accruals. Nonetheless, it failed to give the requisite notice required by Section 204(h) of ERISA, 29 U.S.C. § 1054(h).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment in his favor as follows:

A.     Determining that this is a proper class action which should be certified under Rule 23 of the Federal Rules of Civil Procedure, designating Plaintiff as a representative of the Class and Plaintiff's counsel as counsel for the Class;

B.     Declaring that the Cash Balance Sub-Plan violates Section 204(b)(1)(A), (B), (C) of ERISA, 29 U.S.C. § 1054(b)(1)(A), (B), (C);

16

C.      Declaring that the Cash Balance Sub-Plan violates Section 204(b)(1)(G) of ERISA, 29 U.S.C. § 1054(b)(1)(G);

D.      Declaring that the Cash Balance Sub-Plan violates the provisions of Section 204(b)(1)(H) of ERISA, 29 U.S.C. § 1054(b)(1)(H);

E.      Declaring that the Cash Balance Sub-Plan is also invalid by reason of the fact that participants in the Delmarva Plan and Atlantic City Plan did not receive the requisite notice required by Section 204(h) of ERISA,  29 U.S.C. § 1054(h);

F.      Reforming the Pepco Holdings Plan to eliminate the Cash-Balance Sub-Plan;

G.      Directing that all participants and former participants who have accrued benefits pursuant to the terms of the Cash Balance Sub-Plan shall have their accrued benefits determined pursuant to the terms of their respective predecessor plan;

H.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and experts' fees; and

I.      Awarding such additional and further relief to which Plaintiff and the Class may be entitled or which the Court considers to be just and proper.

Dated: January 5, 2006                          **CHIMICLES & TIKELLIS LLP**

By: _____

     Pamela S. Tikellis (#2172)
     Robert J. Kriner (#2546)
     A. Zachary Naylor (#4439)
     Robert R. Davis (#4536)
     One Rodney Square
     P.O. Box 1035
     Wilmington, DE 19899
     302-656-2500 (telephone)
     302-656-9053 (fax)


and


17

**CHIMICLES & TIKELLIS LLP**
James R. Malone, Jr.
Joseph G. Sauder
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
610-642-8500 (telephone)
610-649-3633 (fax)

Attorneys for Plaintiff and the Proposed Class